IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JACOB W. POPE                                                    PLAINTIFF

v.                          Civil No.   3:14-cv-03104

SHERIFF JOHN MONTGOMERY;
JAIL ADMINISTRATOR DANIELLE
CAMPFIELD; and BAXTER
COUNTY, ARKANSAS                                                DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, Jacob W. Pope, pursuant to the

provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff maintains his constitutional rights were violated when he was arrested on a

charge of terroristic threatening in Baxter County, Arkansas, and then held in the Baxter County

Detention Center (BCDC) for seven days prior to his first appearance.  He also contends his bond

was set unreasonably high.

Defendants filed a Motion for Summary Judgment (ECF No. 44).  A hearing was held

on April 13, 2017, at 10:00 a.m., to allow the Plaintiff to testify in response to the Motion.  At

the conclusion of the hearing, the matter was taken under advisement pending preparation of this

report and recommendation.

**I.  BACKGROUND**

Plaintiff was arrested on a charge of disorderly conduct on Wednesday, December 12,

2012,[1] after attempting to enter a judge's office without an appointment.  *Defendants' Exhibit*

---

[1] Judicial notice may be taken of the days of a calendar.  *See e.g., Young v. Mabry*, 596 F.2d 229, 343
(8th Cir. 1979).

-1-

(hereinafter *Defts' Ex.*) 1 at 22 (bench warrant).  Plaintiff was taken to jail and immediately bonded out.  *Defts' Ex.* 2 at 1.

Later that day, after a phone call to the Mountain Home Police Department, Plaintiff was arrested for felony terroristic threatening.  During the conversation, Plaintiff allegedly said that he had his "12 gauge ready" and "there are men ready to die for what they believe in."  *Defts' Ex.* 1 at 3.  Further, he said he was becoming one of them, was perturbed, and was wanting to cause problems.  *Id.*  Plaintiff was again booked in to the BCDC.  *Defts' Ex.* 2 at 17.  On December 12, 2012, Plaintiff signed "without prejudice" a waiver of right to formal reading of warrant.  *Defts' Ex.* 1 at 7.  The form indicated bond had been set at $25,000.  *Id.*

On Thursday, December 13, 2012, Judge Gearheart found probable cause to exist for the arrest and ordered that an arrest warrant be issued.  *Defts' Ex.* A at ¶ 12.  On December 14, 2012, bond was set, a criminal information was filed, and a bench warrant was issued.  *Id.* at ¶ 13; *Defts' Ex.* 1 at 1-6.  Bond was set at $50,000.  *Defts' Ex.* A at ¶ 13.

According to Captain Jeff Lewis, the Chief Deputy at the Baxter County Sheriff's Office, during the time period at issue the district judge, on Monday mornings, did first appearances on individuals charged with misdemeanors.  *Defts' Ex.* A at ¶ 4.  The circuit judge did felony first appearances generally on the Thursday following the arrest.  *Id.* at ¶ 5.  The deputy or investigator who made the arrest would try to get the probable cause affidavit to the Prosecuting Attorney's Office the next business day so that the information could be prepared and filed with the Circuit Clerk and the warrant issued.  *Id.*

On new arrests, Captain Lewis says the Sheriff's Office is very diligent about getting a probable cause determination within 48 hours of arrest.  *Defts' Ex.* A at ¶ 6.  On arrests made in

AO72A
(Rev. 8/82)

the field without a warrant, an initial bond is set by the Sheriff, Chief Deputy, or Prosecuting Attorney contemporaneously with the arrest and jail booking. *Id.*

In 2012, the practice was that on Monday mornings the District Court Probation Officers came to the jail and got a list of each misdemeanor detainee who needed to make an appearance in court. *Defts' Ex.* A at ¶ 8. For felony detainees, the Prosecutor's Case Coordinator obtained the information to prepare the docket for the Circuit Court. *Id.* at ¶ 9.

On Monday, December 17, 2012, at the command staff meeting, Captain Lewis indicated he asked the jail administrator, Danielle Campfield (at that time), if Plaintiff had been taken for a first appearance. *Defts' Ex.* A at ¶ 15. He was advised that the Prosecutor's Office said Plaintiff should be brought before the judge on December 19, 2012, and that he would not be seen before that time. *Id.* Captain Lewis returned the arrest warrant on December 18, 2012, indicating that the Plaintiff was arrested on December 12, 2012, and attached the waiver of formal reading signed by Plaintiff on December 12, 2012. *Id.* at ¶ 16.

On December 18, 2012, Plaintiff prepared a motion for writ of habeas corpus and a motion for bond reduction. *Defts' Ex.* 1 at 13-15. The motions were filed on December 19, 2012. *Id.* Plaintiff appeared with his attorney and entered a plea of not guilty. *Id.* at 11. Bond was reduced to $5,000. *Id.* at 17. Plaintiff posted bond that day. *Id.* at 19. He was ordered to appear in court on January 24, 2013. *Id.* at 17.

In 2012, General Order 13, concerning procedural due process, was in existence and being used as a guideline that corresponded to the requirements of law in existence since 2006 or 2007. *Defts' Ex.* A at ¶ 3. It was not formally adopted by Sheriff Montgomery until a new policy manual was adopted in 2013. *Id.*

AO72A
(Rev. 8/82)

With respect to first appearances, General Order 13 provides:

1. Every person arrested with or without a warrant who is not released by citation or other lawful manner is entitled to physically appear before a judicial officer without unnecessary delay so that the person can: i) have the charges read, ii) be told of his right to remain silent, iii) be told of his right to an attorney, and iv) ask for release. Rule 8.1 of the Arkansas Rules of Criminal Procedure shall apply.

2. Unless a judicial officer orders otherwise, "without unnecessary delay" shall mean not more than seventy-two (72) hours and the jail staff shall attempt to have each person arrested brought before a judicial officer within seventy-two (72) hours of the arrest for a Rule 8.1 First Appearance Hearing.

3. If a person is not taken before a judicial officer within seventy-two (72) hours after being detained, the Sheriff, Chief Deputy, or Jail Administrator is to be notified so that a Rule 5.2 "Sheriff's Citation" release decision can be made and/or a Court Order can be obtained to permit the jail to continue to hold the detainee past seventy-two hours without a Rule 8.1 Hearing.

*Defts' Ex.* 3(B).

According to Defendants, December 19, 2012, was the first docket call following Plaintiff's arrest on the bench warrant. According to Captain Lewis, Sheriff Montgomery was not involved in Plaintiff's arrest or detention. *Defts' Ex.* A at ¶ 17. Captain Lewis also indicates that Jail Administrator Campfield was not involved in Plaintiff's arrest. *Id.* at ¶ 18. Finally, Captain Lewis states the decision to take Plaintiff before the judge on December 19, 2012 was made by the Prosecutor's Office. *Id.* at ¶ 19.

On January 8, 2014, Plaintiff filed a motion to dismiss the criminal charges based on lack of speedy trial and double jeopardy. *Defts' Ex.* 1 at 64. On January 16, 2014, the motion was granted. *Id.* at 72.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  DISCUSSION

Defendants contend they are entitled to summary judgment for the following reasons: (1) they were not personally involved in Plaintiff's arrest or the scheduling of his first appearance; (2) Plaintiff was afforded due process; (3) there is no basis for official capacity liability; (4) they are entitled to qualified immunity; (5) the delay in the first appearance does not shock the conscience; and, (6) there is no basis for punitive damages.

### A.  Prompt First Appearance

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial

detainee's right to a prompt appearance in court after an arrest.  *See Hayes v. Faulkner County*,

388 F.3d 669, 673 (8th Cir. 2004).  In *Hayes*, the Court of Appeals for the Eighth Circuit applied

the framework set forth by the Seventh Circuit in *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir.

1998), in determining whether an extended detention following an arrest violated the Due

Process Clause.

Applying this framework, the *Hayes* court considered the following three questions:  (1)

does the Due Process Clause prohibit an extended detention, without an initial appearance,

following arrest by a valid warrant; (2) does the Defendant's conduct offend the standards of

substantive due process; and, (3) do the totality of the circumstances shock the conscience.

*Hayes*, 388 F.3d at 673; *see also Luckes v. County of Hennepin*, 415 F.3d 936 (8th Cir. 2005).

Addressing the first question, the Eighth Circuit noted that "[a]lmost every element of

a 'first appearance under state statutes or the Federal Rules of Criminal Procedure serves to

enforce or give meaning to important individual rights that are either expressly granted in the

Constitution or are set forth in Supreme Court precedent."  *Hayes*, 388 F.3d at 673 (internal

quotation marks and citations omitted).  The Court stated that an extended detention impinged

upon and threatened those rights.  *Id.*  The Eighth Circuit concluded that the "Due Process

Clause forbids an extended detention, without a first appearance, following arrest by warrant."

*Id.*

-6-

The question then becomes whether under the facts of this case Plaintiff was subjected to an extended detention without a first appearance.  It is undisputed that Plaintiff was arrested on December 12, 2012, and did not appear before a judge until December 19, 2012.

With respect to first appearances, Rule 8.1 of the Arkansas Rules of Criminal Procedure provides that "[a]n arrested person who is not released by citation or by other lawful manner **shall** be taken **before a judicial officer without unnecessary delay**." (emphasis added).  With respect to the nature of the first appearance, Rule 8.3 of the Arkansas Rules of Criminal Procedure provides in relevant part that the judicial officer shall inform the arrested person of the charges against him, that he is not required to say anything and that anything he says can be used against him, that he has the right to counsel, and that he has a right to communicate with his counsel, his family, or his friends, and that reasonable means will be provided for him to do so. Ark. R. Crim. P. 8.3.  After the arrested person has an opportunity to confer with counsel, the judicial officer may proceed with the pretrial release inquiry. *Id.*

With respect to first appearances, the written policy, that was used as a guideline in accordance with the law, *see Defts' Ex.* A at ¶ 3, but apparently not formally adopted by the Sheriff, *see id.*, provided that detainees should be provided a first appearance within 72 hours of arrest.  In practice, Captain Lewis states that felony detainees waited for a first appearance until the Thursday after their arrest. *Id.* at ¶ 5.  Neither the written policy nor the informal policy was followed in Plaintiff's case.  Plaintiff was arrested on Wednesday, December 12, 2012.  The first Thursday following his arrest was Thursday, December 13, 2012.   Plaintiff's first appearance actually occurred on Wednesday, December 19, 2012, a week following his arrest.

AO72A
(Rev. 8/82)

The probable cause determination made on December 14, 2012, satisfies the Fourth Amendment requirements for a prompt judicial determination of probable cause following a warrantless arrest. *See Gerstein v. Pugh*, 420 U.S. 103, 126 (1975). The actions taken, however, did not afford Plaintiff the adversary safeguards, such as the right to be present at the hearing, the right to hear the charges against him, the right to the appointment of counsel, etc., afforded at the first appearance. *See e.g., Garcia v. Chicago*, 24 F.3d 966, 973-974 n.2 (7th Cir. 1994) ("While this process comports with the requirements of *Gerstein*, it is far from clear that it is the equivalent of the hearing we have required as a prerequisite to extended pre-trial detention in *Coleman* or *Patton*."). I conclude Plaintiff was subjected to an extended detention following his December 12, 2012 arrest.

Second, the Court must consider "whether the [Defendant's] conduct offends the standards of substantive due process." In this regard, the *Hayes* court noted that:

> [d]eliberate indifference to prisoner welfare may sufficiently shock the conscience to amount to a substantive due process violation. [L]iability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.

*Hayes*, 388 F.3d at 674.

In this case, Plaintiff has sued the Defendants in both their individual and official capacities. Claims against the Defendants in their official capacities are the equivalent of a suit against Baxter County. *See e.g., Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) ("An official-capacity suit is merely another way of pleading an action directly against the public entity itself"). "In order to make out a case of municipal liability against the County, [a Plaintiff] must show that his constitutional injury was caused by a policy or custom of the municipality, the

-8-

implementation of which amounted to deliberate indifference to his constitutional rights." *Lund v. Hennepin County*, 427 F.3d 1123, 1125 (8th Cir. 2005) (citations omitted).  "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005).

In the *Hayes* case, the Plaintiff argued the County policy was to submit names of detainees to the court and then wait for the court to schedule a hearing.  The Eighth Circuit noted the Court in *Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992), had found a policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned.  Further, the Eighth Circuit noted the court in *Armstrong* , 152 F.3d at 578-579, had stated "[a] policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference."  In the case before it, the Eighth Circuit held that "[b]ecause the County's policy . . . attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees' due process rights."  *Hayes*, 388 F.3d at 674.

In this case, by affidavit Captain Lewis indicates it was left to the Prosecutor's Case Coordinator to get this information and prepare the docket for the circuit court.  *Defts' Ex.* A at ¶¶ 8-9.  Further, Captain Lewis indicates it was the prosecutor who set the first appearance for December 19, 2012. *Id.* at ¶¶ 15 & 19.

I believe Plaintiff has established that the County's "policy," or its failure to adopt adequate safeguards, provide training, or supervision, was the product of deliberate indifference to the constitutional rights of detainees.  No internal safeguards were put in place, no procedures

AO72A
(Rev. 8/82)

were developed to ensure that the first appearances in fact occurred, no follow-up was done, and no steps were taken to ensure that the detention center in fact had the authority to continue to detain the arrested individuals. The inadequacy of this policy is both obvious and likely to result in the deprivation of constitutional rights. *See e.g., Armstrong*, 152 F.3d at 578-79 ("[J]ailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and how long they have sat there. They are the ones directly depriving detainees of liberty."). Captain Lewis was aware of the fact that since "2006 or 2007" the law required a "prompt first appearance." *Defts' Ex.* A at ¶ 3.

The *Hayes* case did not declare new constitutional law or Arkansas procedural law. The Arkansas Rules of Criminal Procedure were adopted by per curiam order of the Arkansas Supreme Court in 1975 and became effective on January 1, 1976. *State v. Lester,* 343 Ark. 662 (2001). The Arkansas Supreme Court, long before the *Hayes* decision, ruled that the first appearance is mandatory and emphasized the importance of first appearance in the protection of an accused's constitutional rights. *See e.g., Britt v. State*, 334 Ark. 142 (1998) ("The communications required by Rule 8.3 go beyond a mere probable-cause determination, and guarantee that the accused's constitutional rights will be protected and implemented."); *Bolden v. States*, 262 Ark. 718 (1978) (prompt-appearance requirement of Rule 8.1 is mandatory). The Arkansas Supreme Court also held, prior to the *Hayes* decision, that various periods of delay, including the 30 day period being utilized in Washington County between arrest and first appearance, ignored the specific requirements of Rule 8.1 and constituted a violation of the accused's rights. *See e.g., Duncan v. State*, 291 Ark. 521 (1987) (three and one-half days of delay prior to first appearance unreasonable where prosecutor made a deliberate decision to hold

-10-

Duncan in detention and ignore the prompt appearance requirement – suppression of custodial

statement was the remedy); *Cook v. State*, 274 Ark. 244 (1981) (30 day delay sufficient to

establish a violation; remedy was suppression of the custodial statement).

The "third and final step in this substantive due process analysis is determining whether,

in the totality of the circumstances, the defendants' conduct in depriving the [Plaintiff] of a

constitutional right shocks the conscience.  This is a question of law." *Hayes*, 388 F.3d at 675

(citations omitted).

In this regard, the Court stated:

> In the totality of circumstances in this case, the key is Arkansas Rule of Criminal
> Procedure 8.1, entitled "Prompt first appearance."  The Rule requires: "An
> arrested person who is not released by citation or by other lawful manner shall be
> taken before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1.
> Rule 8.1 is mandatory. *Bolden v. State,* 262 Ark. 718, 561 S.W.2d 281, 284
> (1978).  Detentions of less than 38 days violate Rule 8.1. *Duncan v. State,* 291
> Ark. 521, 726 S.W.2d 653, 656 (1987) (3 ½ days); *Cook v. State,* 274 Ark. 244,
> 623 S.W.2d 820, 821 (1981) (31 days); *cf. Richardson v. State,* 283 Ark. 82, 671
> S.W.2d 164 (1984) (56 days).  Rule 8.1 is designed to protect "basic and
> fundamental rights which our state and *federal constitutions* secure to every
> arrestee." *Bolden,* 561 S.W.2d at 284 (emphasis added).

*Hayes*, 388 F.3d at 675.  The Court concluded that "[t]he County's and Kelley's failure to take

Hayes before a judge for 38 days [for a first appearance] shocks the conscience." *See also*

*Armstrong*, 152 F.3d at 581-82 (57 days); *Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir.

1985) (18 days).

Plaintiff first brings individual capacity claims against the Defendants.  With respect to

the individual capacity claims, I conclude that Defendants' failure to take Plaintiff before the

judge for seven days following his arrest does not shock the conscience. *See e.g., Alexander v.*

-11-

*City of Muscle Shoals*, 766 F. Supp. 2d 1214, 1234 (N.D. Ala. 2011) (nine day detention between

arrest and time he brought before a judge was not so severe as to shock the conscience); *Sanchez*

*v. Campbell* No. 4:09-cv-420, 2010 WL 547620, *3 (N.D. Fla. Feb. 10, 2010) (five day detention

prior to first appearance does not violate the Fourteenth Amendment); *Afeworki v. Thompson*,

No. C06-628, 2007 WL 2572293, *3-5 (W.D. Wash. Sept. 5, 2007) (17 day delay did not amount

to a due process violation); *Pledger v. Reece*, No. 04-3084, 2005 WL 3783428, *4 (W.D. Ark.

Nov. 10, 2005) (15 day delay before being brought before a judge did not shock the conscience).

The Defendants may not be held liable in their individual capacities.

Next, Plaintiff contends Sheriff Montgomery is liable on the basis of failure to train or

supervise. A supervisor, such as Sheriff Montgomery, can be held liable if his failure to train

or supervise the offending actor caused the deprivation. *Audio Odyssey, Ltd. v. Brenton First*

*Nat'l. Bank*, 245 F.3d 721, 742 (8th Cir. 2001).

In *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010), the Court set forth the

requirements for supervisory liability for failure to supervise. It said:

> For Sheriff [Montgomery] to have violated [Plaintiff's] constitutional rights by
> failing to supervise [the other named Defendants, Plaintiff] must show that
> Sheriff [Montgomery]:
>
> 1) Received notice of a pattern of unconstitutional acts committed by
> subordinates;
>
> 2) Demonstrated deliberate indifference or tacit authorization of the offensive
> acts;
>
> 3) Failed to take sufficient remedial action; and
>
> 4) That such failure proximately caused injury to [Plaintiff].

AO72A
(Rev. 8/82)

*Id.* (citations omitted). Here, "there is no showing of previous illegalities that place Sheriff [Montgomery] on the requisite notice." *Audio*, 245 F.3d at 742. Thus, any supervisory liability claim fails.

Finally, Plaintiff brings an official capacity claim against Baxter County. He contends Baxter County violated his substantive due process rights. "[I]n order for [Plaintiff] to prove his due process rights were violated and that the County should be held responsible, he must show both that the detention shocks the conscience and that it was caused by a county policy or custom evidencing a level of culpability akin to criminal recklessness." *Lund v. Hennipin County*, 427 F.3d 1123, 1126 (8th Cir. 2005). I conclude that while Plaintiff has shown Baxter County exhibited deliberate indifference with regard to the Due Process requirement of a prompt first appearance, under the totality of the circumstances in this case its conduct does not shock the conscience. Defendants are entitled to summary judgment on this claim.

### B. Bond

With respect to the bond, "setting the bail bond is entirely at the discretion of the presiding judge." *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998). The bond in this case was set by Judge Gearheart on March 13, 2012, and set forth in the criminal information. None of the named Defendants were involved in the setting of the bond. Defendants are entitled to summary judgment on this claim.

### IV. CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 44) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE.**

AO72A
(Rev. 8/82)

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of September 2017.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)